1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9  | JOHN ANDREW FLOYD,

CASE NO. C17-1154-JCC

10             Plaintiff,

ORDER

11    v.

12  | GEICO INSURANCE COMPANY,

13             Defendant.

14

15       This matter comes before the Court on Defendant's motion for summary judgment (Dkt.

16  No. 62). Having thoroughly considered the parties' briefing and the relevant record, the Court

17  hereby GRANTS in part and DENIES in part the motion for the reasons explained herein.

18  **I.    BACKGROUND**

19       Plaintiff John Floyd was an employee of Defendant GEICO for nearly 30 years. (Dkt.

20  No. 1-1 at ¶ 6.) Most recently, Plaintiff was a supervisor in Defendant's Continuing Unit ("CU")

21  department. (Dkt. No. 72 at ¶ 4.) Plaintiff's supervisor was Ms. Yvonne Obeng-Curwood. (Dkt.

22  No. 72 at 2–3.) Defendant offers its employees medical insurance coverage through United

23  Healthcare ("UHC"). (Dkt. No. 1-1 at ¶ 16.) Prior to his termination, Plaintiff had been

24  struggling to obtain medical coverage for a procedure for his advanced vein disease that his

25  doctor deemed necessary. (Dkt. Nos. 1-1 at ¶¶ 15, 16, 18; 72 at 2–3.) Plaintiff followed up about

26  the procedure's coverage with several of Defendant's employees. (Dkt. Nos. 72 at ¶¶ 10–13, 72-

4, 72-5.) Ms. Obeng-Curwood was aware of Plaintiff's efforts to obtain coverage for the procedure. (Dkt. Nos. 72 at ¶¶ 10–13, 72-4, 72-5.)

Plaintiff believed UHC, not Defendant, was responsible for the decision about whether the procedure was covered. (*See* Dkt. No. 72-5 at 3.) However, several of Defendant's employees and UHC made statements to Plaintiff indicating that Defendant did have some kind of decision-making power over the approval or denial of claims. (*See* Dkt. Nos. 72 at ¶¶ 10–13, 72-4) UHC indicated that Plaintiff needed to discuss the issue with Defendant's plan coordinator. (Dkt. No. 72-4 at 3.) Additionally, Defendant's health plan states that Defendant has some discretionary authority over how the plan is interpreted. (Dkt. No. 71-3.)

Plaintiff became increasingly frustrated with his inability to obtain coverage for the procedure. (Dkt. No. 72 at 2–3.) In February 2017, Plaintiff reached out to Mr. Joseph Byington, a Human Resources ("HR") supervisor, and indicated that Plaintiff might pursue his legal options. (Dkt. No. 72-5.) In his email, Plaintiff did not clearly say he wanted to pursue legal options against Defendant; in fact, it appears that Plaintiff meant against UHC. (*Id.*) Ms. Obeng-Curwood received a copy of this email. (*Id.*) Around this same time, another employee of Defendant that Plaintiff was communicating with about his medical coverage, Ms. Debra Jarvis, called Plaintiff's behavior "poisonous" (Dkt. No. 71-5) and an HR employee called Plaintiff "disgruntled" (Dkt. No. 71-6). Neither of these employees were decision-makers in Plaintiff's termination, and the decision-makers were unaware of these comments. (Dkt. No. 65 at ¶ 36.)

On March 2, 2017, Ms. Obeng-Curwood was notified that GEICO had received an irreversible default judgment against an insured, Timothy Ozog, for over $500,000 (the "Ozog claim"). (Dkt. No. 65 at ¶ 14.) Ms. Julia Brost-Clark was the claims adjuster responsible for handling the claim and Plaintiff was Ms. Brost-Clark's supervisor. (*See* Dkt. No. 65-1 at 27–30.) Ms. Obeng-Curwood asked two supervisors, one of which was Mr. Joshua Subich, to investigate Ms. Brost-Clark's and Plaintiff's roles in the default. (Dkt. No. 65 at ¶ 15.) Mr. Subich determined that Plaintiff had either accessed the claim, had the ability to access it, or should have

known to access it on multiple occasions. (*See* Dkt. No. 65-1 at 25–26.) Mr. Subich determined that Plaintiff ignored or missed time-sensitive demands. (*Id.*) After determining that Plaintiff's supervision of the Ozog claim was insufficient, Mr. Subich recommended Plaintiff's termination to Ms. Obeng-Curwood. (*Id.*)

After receiving Mr. Subich's recommendation, Ms. Obeng-Curwood asked Ms. Fiona Hunt to analyze the Ozog claim. (Dkt. No. 65 at ¶ 21.) Ms. Hunt identified two other claims of Ms. Brost-Clark's that she deemed Plaintiff also did not properly supervise (the Mealing claim and the Musselman claim). (*Id.*)

On March 6, 2017, Ms. Obeng-Curwood and Mr. Subich interviewed Plaintiff. (*Id.* at ¶ 22.) The parties dispute what transpired at this meeting, but agree that Plaintiff provided Defendant with a timeline of what he believed to be his activity on the Ozog claim. (*See* Dkt. Nos. 65 at ¶ 22, 72 at 5.) Later that day, Plaintiff sent an email to Mr. Byington about his continuing medical coverage problems and indicated in passing that he was pursuing his legal options. (Dkt. No. 72-6.) Ms. Obeng-Curwood knew about this email. (*Id.*) Ms. Obeng-Curwood attempted to conduct a second interview with Plaintiff, but he refused to participate because he had heard rumors that he would be fired. (Dkt. No. 65 at ¶ 26.) The next day, Plaintiff was terminated. (Dkt. No. 71-15.)

Plaintiff sued Defendant alleging: (1) that he was terminated because of his age and his disability, in violation of Washington's Law Against Discrimination ("WLAD"), Wash. Rev. Code § 49.60.180, (2) that he was terminated in retaliation for his threat to bring legal proceedings against Defendant, in violation of WLAD, Wash. Rev. Code § 49.60.210, and (3) that Defendant negligently inflicted emotional distress. (Dkt. No. 1-1 at 5–7.) Defendant now moves for summary judgment on all of Plaintiff's claims. (Dkt. No. 62.)

## II.    DISCUSSION

### A.    Summary Judgment Legal Standard

A court must grant summary judgment "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is genuine if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is material if the fact "might affect the outcome of the suit under the governing law." *Id.* At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in the nonmovant's favor. *Id.* at 255.

### B. Age Discrimination, Disability Discrimination, and Retaliation Claims

Under WLAD, it is unlawful for an employer to discriminate on the basis of several protected classes, including age and disability. Wash. Rev. Code § 49.60.180. It is also unlawful for an employer to retaliate against an employee for engaging in protected conduct. Wash. Rev. Code § 49.60.210. Washington courts use the *McDonnell Douglas* burden-shifting framework to analyze WLAD discrimination and retaliation claims. *Hines v. Todd Pac. Shipyards Corp.*, 112 P.3d 522, 529 (Wash. Ct. App. 2005) (discrimination); *Short v. Battle Ground Sch. Dist.*, 279 P.3d 902, 911 (Wash. Ct. App. 2012), overruled on other grounds by *Kumar v. Gate Gourmet, Inc.*, 325 P.3d 193, 199–20 (Wash. 2014) (retaliation). Under this framework, the employee must first establish a *prima facie* case of discrimination or retaliation.[1] *Hines*, 112 P.3d at 529; *Short*, 279 P.3d at 911. Once the employee establishes a *prima facie* case, the burden shifts to the employer to produce a legitimate, nondiscriminatory or nonretaliatory justification for its adverse employment decision. *Hines*, 112 P.3d at 529; *Short*, 279 P.3d at 911. If the employer provides such justification, the burden shifts back to the employee to prove that the employer's justification is a mere pretext. *Hines*, 112 P.3d at 529; *Short*, 279 P.3d at 912.

#### 1. Legitimate, Nondiscriminatory or Nonretaliatory Reasons

Defendant offers two justifications for its decision to terminate Plaintiff. First, Defendant

---

[1] Defendant concedes, for purposes of its motion for summary judgment, that Plaintiff has established a *prima facie* case for all three of his WLAD claims. (Dkt. No. 62 at 21.)

contends that it fired Plaintiff because of Plaintiff's negligent or reckless supervision of Ms. Brost-Clark and her claims, which violated Defendant's code of conduct. (Dkt. No. 62 at 21.) Second, Defendant argues that it fired Plaintiff because of his refusal to participate in Defendant's investigation. (*Id.*)

A supervisor's negligent or reckless supervision of his employee, in violation of company policy, is a legitimate reason for termination. An employee's refusal to participate in an investigation into alleged misconduct could also be a legitimate reason for termination. *See Handson v. Overlake Hosp. Med. Ctr.*, 2017 WL 1438037, slip op. at 5 (W.D. Wash. 2017). Therefore, Defendant has met its burden of establishing a legitimate, nondiscriminatory, and nonretaliatory reason for terminating Plaintiff. Plaintiff must produce sufficient evidence to raise a genuine dispute of material fact on the issue of whether Defendant's stated reasons are pretextual. *See Hines*, 112 P.3d at 529; *Short*, 279 P.3d at 912.

### 2. Pretext

"The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered." *Shokri v. Boeing Co.*, 311 F. Supp. 3d 1204, 1221 (W.D. Wash. 2018) (quoting *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000)). A plaintiff satisfies his burden by offering sufficient evidence to create a genuine dispute of material fact that either (1) the defendant's stated reason is false, or (2) although the defendant's reason is legitimate, discrimination or retaliation was still a substantial factor motivating the adverse employment action. *See Scrivener v. Clark Coll.*, 334 P.3d 541, 546 (Wash. 2014).

#### a. Falsity

Plaintiff offers several theories to argue that Defendant's justifications are false. First, Plaintiff argues that he had a diligent method of ensuring that claims were properly supervised, so his supervision was not negligent or reckless. (Dkt. No. 70 at 24.) Second, Plaintiff argues that Defendant's investigation into Plaintiff's wrongdoing was a sham. (*Id.* at 24–25.) Third, Plaintiff contends that comparator evidence shows that other supervisors who acted similarly were not

punished like Plaintiff. (*Id.* at 25–27.) Fourth, Plaintiff argues that his method of supervision was common amongst supervisors in his office. (*Id.* at 23–24.)

Regarding Plaintiff's first theory, Plaintiff has put forth evidence that establishes a genuine dispute of material fact on the issue of whether his supervision method was sufficiently diligent. Plaintiff used a demand log to track the claims he was responsible for. (Dkt. Nos. 64-1 at 17–70, 72 at 5.) The demand log shows that, although Plaintiff diligently used it in the past, its utilization decreased significantly in 2016 and 2017. (Dkt. No. 64-1 at 69–70.) Plaintiff claims that the demand log is missing entries, and is in fact reflective of missing discovery rather than decreased use. (Dkt. No. 70 at 24.) Plaintiff offers calendar invitations that he argues show that the demand log is missing entries (Dkt. No. 72-11) and a declaration that these invitations could not exist unless they were generated by the demand log (Dkt. No. 72 at 6–7). These calendar invitations, which are not reflected in the demand log, could lead a reasonable fact-finder to conclude that the demand log in the record may not accurately reflect Plaintiff's supervision methods. They therefore support a finding of pretext.

Regarding Plaintiff's second theory, Plaintiff contends that the investigation into his alleged wrongdoing was a sham because he received a positive performance review shortly before his termination and because the investigators did not interview any other adjusters that Plaintiff supervised except Ms. Brost-Clark. Both arguments are irrelevant. Plaintiff's prior positive performance reviews have no bearing on the allegation that Plaintiff was fired because he failed to adequately supervise certain claims, as Defendant was not aware of the failure when it made the positive performance assessments. Likewise, the investigators' failure to interview other adjusters besides Ms. Brost-Clark is irrelevant because Plaintiff was fired for his failure in supervising Ms. Brost-Clark's claims, not any other adjuster's claims. Therefore, Plaintiff's contention of a sham investigation does not support a finding of pretext.

Plaintiff's third theory concerns the dissimilar treatment of comparator employees. To be relevant, comparators must be similarly situated in all material respects—the comparator

employee must have (1) engaged in similar misconduct and (2) been disciplined by the same decision-maker. *See Vasquez v. Cty. of L.A.*, 349 F.3d 634, 641 n.17 (9th Cir. 2003); *Ankeny v. Napolitano*, 2010 WL 4094687, slip op. at 2 (W.D. Wash. 2010). However, the comparator employee need not be identical to the plaintiff. *See Rollins v. Mabus*, 627 F. App'x 618, 619 (9th Cir. 2015).

Plaintiff argues that the following employees are valid comparators: Mr. Dave Masterson, Ms. Hunt, and other CU supervisors who were responsible for a claim that resulted in a default judgment. (Dkt. No. 70 at 25–27.) Only Mr. Masterson and Ms. Hunt were also supervised by Ms. Obeng-Curwood, who supervised and was ultimately responsible for the decision to terminate Plaintiff; therefore, any other CU supervisors cannot be used as valid comparators. *See Vasquez*, 349 F.3d at 641 n.17. Ms. Hunt is also not a valid comparator because her misconduct was not similar to Plaintiff's. Although Ms. Hunt accessed the Ozog claim multiple times and could have intervened to stop the impending irreversible default judgment, she was not responsible for doing so. (*See* Dkt. No. 65 at 13.) The Ozog claim was Ms. Brost-Clark's responsibility, and Plaintiff supervised Ms. Brost-Clark. (*See* Dkt. No. 65-1 at 27–30.) In fact, Ms. Hunt's accessing of the Ozog claim was actually prohibited and Ms. Hunt was punished for impermissibly accessing the claim. (Dkt. No. 65 at 13.) Because Ms. Hunt was not responsible for the supervision or handling of the Ozog claim, she is not similarly situated to Plaintiff.

Defendant contends that Mr. Masterson is not similarly situated to Plaintiff for four reasons—(1) they work in different units, (2) Mr. Masterson was not a CU supervisor or working at the same level as Plaintiff, (3) the default judgment in Mr. Masterson's case was less than five percent of the size of the default judgment in the Ozog claim, and (4) Mr. Masterson actively documented his case and supervised and instructed the adjuster. (Dkt. No. 76 at 7.) The first two reasons are irrelevant because both Plaintiff and Mr. Masterson were supervisors, in their respective units, who were obligated to follow the same code of conduct. (*See* Dkt. No. 72 at 2.) The third reason is irrelevant because Plaintiff was fired for a pattern of negligent or reckless

supervision, not because of the result. (*See* Dkt. No. 62 at 21.) The fourth reason is relevant because Defendant contends that Mr. Masterson adequately supervised his claims, whereas Plaintiff did not. (Dkt. No. 65 at 13.) If that is true, Mr. Masterson would not be a proper comparator. But how Defendant's supervisors normally supervised, instructed, and documented is disputed, as discussed below. Because Mr. Masterson may be a valid comparator, his different treatment may help support a finding of pretext.

Plaintiff's final theory is that the record indicates that other supervisors in Plaintiff's office handled their supervisory duties exactly like Plaintiff did, but they were not terminated for their behavior. While it is true that a plaintiff's subjective belief that he is not responsible for mistakes is legally insufficient to establish pretext, *Griffith v. Scnhnitzer Steel Indus., Inc.*, 128 Wn. App. 438, 447 (2005), Plaintiff here has provided evidence that his belief was not merely subjective because it was held by other supervisors in his office. Plaintiff's evidence establishes that three other supervisors used the same supervisory and claims handling practices for which Plaintiff was allegedly terminated. (*See* Dkt. Nos. 73, 74, 75.) If three other supervisors handled their supervisory duties the same way as Plaintiff, it tends to show that the general office practice was to handle duties that way. Thus, the use of the same practices between the supervisors indicates that these were general practices. This evidence casts doubt on the veracity of Defendant's claim that it fired Plaintiff for a pattern of negligent or reckless supervision.

The allegedly missing demand log entries, Mr. Masterson's treatment, and declarations of other supervisors that they handled supervisory duties in the same manner as Plaintiff all tend to cast doubt on whether Defendant did indeed terminate Plaintiff for a pattern of negligent or reckless supervision. Therefore, there is a genuine dispute of material fact regarding whether Defendant terminated Plaintiff for its proffered justifications.

b. *Discrimination or Retaliation as a Motivating Factor*

Even if a plaintiff cannot produce evidence that tends to show the falsity of the defendant's proffered legitimate reason, a plaintiff can establish pretext by showing that

discrimination or retaliation was nevertheless a motivating factor in the defendant's adverse employment action. *See Scrivener*, 334 P.3d at 546.

### i.    Age discrimination

Defendant argues that Plaintiff cannot show that age discrimination motivated it to terminate him because (1) Plaintiff's replacement was 40 years old and was the oldest applicant for the position, and (2) Ms. Brost-Clark, who was also fired for misconduct arising out of the same incident, was only 33 years old. (Dkt. No. 62 at 22–24.) Ms. Brost-Clark's termination is irrelevant, as she was the employee directly responsible for the mistake, whereas Plaintiff contends he was fired despite the fact that he was not directly responsible. (Dkt. No. 62 at 22–24.) With regard to the first argument, Defendant argues that a 40-year-old replacement is not young enough to raise an inference of age discrimination, when the age difference is only 11 years. (*Id.* at 23.) By itself, an 11-year age difference may not be sufficient to raise an inference of discrimination. However, as discussed above, Plaintiff has raised an inference of the falsity of Defendant's justifications. The age difference between Plaintiff and his replacement further adds to the allegation that Defendant's justifications are pretextual.

### ii.    Disability discrimination

Defendant argues that Plaintiff cannot show that disability discrimination motivated it to terminate Plaintiff because (1) Defendant did not deny any Family and Medical Leave Act ("FMLA") requests and, in fact, allowed Plaintiff to take substantial leave, (2) Plaintiff never heard discriminatory comments by any of Defendant's employees, and (3) Plaintiff's disability did not cause performance issues. (Dkt. No. 62 at 24–25.) With regard to Defendant's first argument, Plaintiff argues that, although Defendant did not deny FMLA requests, it suspended Plaintiff's request. (Dkt. No. 72 at 2–3, 72-3.) The email that Plaintiff points to is insufficient to create a genuine dispute of material fact because the email just tends to indicate that Plaintiff's request is on hold while he waits for approval from UHC. Moreover, the emails in the record tend to show that Defendant attempted to assist Plaintiff with his medical coverage issues. (*See,*

*e.g.*, Dkt. No. 66-1.) With regard to Defendant's second defense, Plaintiff has put forward evidence that the day after Plaintiff was terminated, Mr. Subich, one of the supervisors involved in Plaintiff's termination, "stated that [Defendant]'s decision to fire [Plaintiff] was similar to the need to 'clean out' the necrotic tissue from an infected wound." (Dkt. No. 73 at 4.) Defendant's third defense is irrelevant to the issue of Defendant's discrimination toward Plaintiff. Mr. Subich's comment further adds to the allegation that Defendant's proffered reasons for termination were pretextual.

iii.   <u>Retaliation</u>

Defendant argues that Plaintiff cannot show that Defendant retaliated against Plaintiff for engaging in protected conduct when it terminated Plaintiff because (1) timing alone is insufficient to establish retaliation, (2) UHC is a separate entity from Defendant, and thus, Defendant cannot fear litigation that Plaintiff threatened against UHC, and (3) Defendant's employees' comments that Plaintiff's behavior was "poisonous" and that Plaintiff was "disgruntled" do not implicate Defendant because these employees were not involved in the termination decision. (Dkt. No. 62 at 25–26.)

The Court agrees with Defendant's last argument—comments by Defendant's employees, though unprofessional, had no bearing on Plaintiff's termination. The employees had no influence over Plaintiff's termination and their comments were not known by Ms. Obeng-Curwood. (Dkt. No. 76 at 9.) With regard to Defendant's second defense, whether Defendant had any authority to approve or deny Plaintiff's medical insurance coverage is in dispute. Although Plaintiff said that he believed that Defendant and UHC were separate entities, (Dkt. No. 72-5), Ms. Obeng-Curwood, Ms. Summer Groves, Mr. Byington, and UHC all made statements to Plaintiff that insinuated that Defendant did have some authority to approve or deny Plaintiff's coverage. (*See* Dkt. Nos. 72 at 3–4, 72-4, 72-6.) Moreover, a GEICO manual indicates that Defendant has the authority to "interpret" the insurance policy. (Dkt. No. 71-3 at 3.)

If Defendant was at all responsible for the decision of whether to approve or deny

coverage for Plaintiff's procedure, then any threat of litigation Plaintiff may have made (regardless of whether it was made against UHC or Defendant) could have been perceived as a threat against Defendant. In mid-February 2017, Plaintiff emailed Mr. Byington indicating that he was considering legal action against UHC. (Dkt. No. 72-5.) This email was forwarded to Ms. Obeng-Curwood. (*Id.*) The day before Plaintiff's termination, Plaintiff again indicated he was considering legal action, and this email was again forwarded to Ms. Obeng-Curwood. (Dkt. No. 72-6.) Regardless of Plaintiff's knowledge of who he should sue for improper denial of medical coverage, if Ms. Obeng-Curwood knew that Defendant had decision-making authority over the insurance plan and terminated Plaintiff shortly after his complaints, a reasonable trier of fact could find that Plaintiff was fired in retaliation for his threats of litigation.

The Court finds that the facts in the record, particularly those included in the other supervisors' declarations, (Dkt. Nos. 73, 74, 75), tend to show that Defendant's proffered reasons for Plaintiff's termination may be false. Although not as persuasive, Plaintiff has also put forward evidence that Defendant may have actually been driven by discriminatory or retaliatory motives. The Court finds that there is enough evidence in the record to create a genuine dispute of material fact as to whether Plaintiff was fired for nondiscriminatory and nonretaliatory purposes. Defendant's motion for summary judgment with regard to the age discrimination, disability discrimination, and retaliation claims is DENIED.

### C.    Failure to Accommodate Claim

The parties dispute whether Plaintiff asserted a claim that Defendant failed to accommodate his disability. (Dkt. Nos. 62 at 24, 70 at 22). There is nothing in the complaint that would put Defendant on notice that a reasonable accommodation claim is being made. (*See generally* Dkt. No. 1-1.) Moreover, during his deposition, Plaintiff admitted that such a claim does not exist. (Dkt. No. 63-1 at 35.) The Court finds that no failure to accommodate claim has been properly pled and any argument about such claim is not properly before the Court.

//

**D.** **Negligent Infliction of Emotional Distress ("NIED") Claim**

A plaintiff claiming NIED must prove the elements of negligence—duty, breach, causation, and damage—with the additional requirement of proving damages by objective symptomatology. *Kloepfel v. Bokor*, 66 P.3d 630, 634 (Wash. 2003). In the employment context, a plaintiff cannot bring a claim for NIED based on the employer's disciplinary acts or a personality dispute. *Chea v. Men's Wearhouse, Inc.*, 932 P.2d 1261, 1264–65 (Wash. Ct. App. 1997). Plaintiff's claims in this case are based strictly on Defendant's decision to terminate him, which is a disciplinary act. Plaintiff cannot bring an NIED claim without facts beyond that his allegedly impermissible termination. Therefore, Defendant's motion for summary judgment on Plaintiff's NIED claim is GRANTED.

## III.  CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (Dkt. No. 62) is GRANTED in part and DENIED in part. Defendant's motion for summary judgment on Plaintiff's WLAD claims is DENIED. Defendant's motion for summary judgment on Plaintiff's NIED claim is GRANTED and the NIED claim is DISMISSED with prejudice.

DATED this 29th day of November 2018.

John C. Coughenour
UNITED STATES DISTRICT JUDGE